[Civ. No. 14460. Fourth Dist., Div. One. Oct. 7, 1976.]

WILLIS B. HALL, Plaintiff and Appellant, v.
BUREAU OF EMPLOYMENT AGENCIES,
Defendant and Respondent.

**COUNSEL**

Willis B. Hall, in pro. per., and Craig W. Walker for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Earl R. Plowman, Deputy Attorney General, for Defendant and Respondent.

**OPINION**

**WHELAN, J.***—This appeal is by Willis B. Hall from a judgment denying his petition for mandate directed to the Bureau of Employment Agencies (Bureau), which is within the Department of Consumer Affairs of the State of California and is charged with the licensing and regulation of employment agencies.

Mr. Hall is a licensee of the Bureau and has been since 1968. His headquarters is in the City of San Diego.

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

In 1973 and 1974, a series of four accusations was filed by Bureau against Mr. Hall charging him with certain breaches of professional conduct. Those accusations were heard in November 1973 and July 1974 and resulted in findings that Mr. Hall, in each of the four cases, conducted his relations with those for whom he acted as agent in a manner inconsistent with his duties as an agent.

Based upon its findings of fact,[1] Bureau determined Mr. Hall had violated specific provisions of the Business and Professions Code:

[1]The findings in the four cases were as follows:

Count I [case of Mark Bryant]:

"On or about September 15, 1972, one Mark Bryant was placed in a job as a dispatcher with the Tony Sampo Equipment Rental Company, 6990 Mission Gorge Road, San Diego, California, upon a referral from respondent agency. A fee of $345 was due from said Bryant to respondent for said placement. It is further found with respect to said placement transaction, as follows:

"A. Several telephone calls were placed by respondent to said Bryant at his place of employment regarding payment of said fee, prior to payment of said fee by Bryant on September 25, 1972. It was not established that respondent contacted Bryant's said employer regarding non-payment by Bryant of the said $345 fee.

"B. Said Mark Bryant was hired at $2.50 per hour. His rate of pay was increased to $3.00 per hour by his said employer two weeks after his employment. Respondent was mistakenly advised by said employer that said Bryant was still receiving $2.50 per hour, at a time when his pay had in fact already been increased to $3.00 per hour.

"C. Upon discovering that Mark Bryant was, in fact, earning at the increased rate of $3.00 per hour, respondent, pursuant to the agreement between the parties, demanded an additional fee of approximately $100. Although Bryant did not refuse to pay the additional fee, he failed to do so, and respondent was thereafter awarded judgment in the amount of $50 on his complaint filed by him against Bryant in the Small Claims Court.

"D. After respondent learned of the said increase in Bryant's rate of pay, in excess of ten telephone calls were made by respondent to Bryant's employer to complain about Bryant's failure to pay respondent's said additional fee, and respondent did urge said employer to put pressure on Bryant to pay respondent.

"E. While it is true that respondent did discuss finding a replacement for Bryant with his said employer, it was not established that respondent urged Bryant's employer to terminate his said employment with the purpose of supplying another employee and collecting a separate fee for providing said replacement employee."

Count II [case of Michael L. Rowray]:

"The following facts relate to the placement of one Michael L. Rowray:

"A. On July 12, 1972, Michael L. Rowray entered into a written contract with respondent to secure employment at Western Dialectric Corporation. Said contract provided that said Rowray would start said employment at a salary of $1.75 per hour for a period of two weeks and then be raised to $2 per hour. Respondent's fee for placing Rowray was calculated upon the said salary figures, and was fixed in said contract in the total amount of $255. Said sum of $255 was paid by Rowray to respondent on July 13, 1972.

"B. Rowray commenced employment for Western Dialectric on or about July 17, 1972 and continued said employment to on or about August 25, 1972, a period of

"As to Count I, [Mr. Hall] violated Section 9993(a) of the Business and Professions Code, but not Section 9993(i) thereof;

approximately 40 calendar days. Rowray left said employment on said date because he did not receive the promised increase in salary from $1.75 to $2 per hour.

"C. Rowray thereafter promptly demanded a refund of the fee paid by him to respondent, as aforesaid, and respondent refused to refund said fee in whole or in part.

"D. Pursuant to the provisions of Sections 9974.3(a) and 9974.5 of the Business and Professions Code, the fee charged said Rowray is not to exceed 40/90ths of the fee properly chargeable for permanent employment, and he is entitled to a refund of any fee paid in excess of said amount, provided that said Rowray did leave the aforesaid employment for just cause.

"E. It is found that said Rowray did leave the aforesaid employment for just cause and is entitled to a refund as set forth in the preceding subparagraph.

"F. By way of mitigation, however, it is found that some delay in the receipt of the aforesaid promised raise by said Rowray resulted from misconduct in the early period of his employment by said Rowray (too much talking on the job)."

Count III [case of Mercedes Ang]:

"Respondent did solicit a fee from Mercedes Ang despite the fact that at no time did respondent place her in, nor did respondent have a job order for the position filled by Mercedes Ang. The surrounding facts are as follows:

"A. On or about May 31, 1973, Mercedes Ang was given a job referral for a position as a full-charge bookkeeper at U. S. Financial Corporation, 1250 - 6th Avenue, San Diego, California. Mercedes Ang's referral came from the California State Human Resources Development Agency, 827 - 8th Street, National City, in response to a job order placed by U. S. Financial Corporation.

"B. Prior to the job interview at U. S. Financial on May 31, 1973, Mercedes Ang went to the respondent Hall & Hall Agency and applied for job interviews. The Hall & Hall Agency sent her out on two interviews with accounting firms, but she was not hired. One of said referrals was to the accounting firm of TOUCHE, ROSS & COMPANY on June 11, 1973.

"C. On or about June 13, 1973, Mercedes Ang was called by U. S. Financial Corporation to commence employment with their firm, and on said date, in response to an inquiry from respondent agency, she informed respondent of said employment.

"D. Thereafter, in the evening of June 13, 1973, respondent did, in two telephone calls placed to Mercedes Ang's residence, state that she owed money to respondent as a fee for obtaining for her the said employment. No amount was specified by respondent and no bill was ever sent to Mercedes Ang.

"E. Numerous telephone calls were placed by respondent thereafter to U. S. Financial and the State Employment Office, with reference to the hiring of Mercedes Ang, and in the course of which calls respondent stated that a fee was due him in connection therewith, and, in response to the assertion that her placement was received from the State Job Bank, respondent replied, 'The hell it was.'

"F. A reasonable basis did exist for respondent to make reasonable inquiries to seek to ascertain or verify whether the said placement of Mercedes Ang did, in fact, result from the said job interview arranged for her by respondent with Touche, Ross & Company, an accounting firm which was employed by U. S. Financial Corporation as its accountant. The aforesaid telephone inquiries, together with respondent's demands for payment, however were unreasonable and improper."

*Count IV* [case of Cyril Olbrich]:

"The following facts relate to the placement of one Cyril Olbrich:

"A. On or about January 23, 1974, one Cyril Olbrich was hired to fill a position as Design Engineer at Century Design, Incorporated, upon a referral from the respondent Hall & Hall Agency. Said Olbrich was to commence employment on or about February

"As to Count II, [Mr. Hall] violated Section 9993(h) of said Code;

"As to Count III, [Mr. Hall] violated Section 9993(a) of said Code, in conjunction with Section 2875(c)(3) of Title 16 of the California Administrative Code, and Section 9993(c) of the Business and Professions Code, but not otherwise;

"As to Count IV, [Mr. Hall] violated Section 9993(a) of the Business and Professions Code in conjunction with Section 2857(c)(3) of Title 16 of the California Administrative Code, and Section 9993(g) of the Business and Professions Code."

Bureau concluded thereby grounds existed for suspension or revocation of Mr. Hall's license, and ordered a 20-day suspension as to each of the four counts, operation of the order to be suspended as to 15 days on each count, on condition Mr. Hall be on probation for one year and not exercise any privilege under his license for a period of 20 days.

The trial court in the proceeding for mandate applied the independent judgment test to the evidence presented to the hearing officer in the disciplinary proceeding and denied the petition for mandate.

Mr. Hall contends (1) that the term "unprofessional conduct" as used in the Employment Agency Act is unconstitutionally vague; (2) that the evidence is insufficient to support the findings of the hearing officer and the decision of the trial court; and (3) that in the Rowray case Bureau was without jurisdiction to determine Rowray was entitled to a refund.

---

4, 1974, and the fee due respondent agency for said placement was to be paid by Century Design.

"B. Subsequent to the hiring of said Olbrich, but prior to his beginning employment, respondent Hall & Hall Agency made six to eight telephone calls to various personnel of said employer Corporations regarding payment of their said fee.

"C. Subsequent to Cyril Olbrich's commencing said employment respondent Hall & Hall Agency continued placing said telephone calls, and did employ subterfuge and a false name to gain access to Cyril Olbrich, in attempts to expedite payment of their said fee.

"D. Despite the fact that the understanding of the parties involved was that the fee for the position in question was to be paid by the employer, the respondent Hall & Hall Agency requested that Olbrich sign a copy of the contract between his employer and respondent, and respondent further stated to Olbrich that he would be responsible for the fee if the employer did not pay it. No demand for payment of said fee or any part thereof was ever otherwise made upon Olbrich by respondent.

"E. It is further found that respondent had a reasonable basis for concern with regard to the collection of said fee by reason of the delay in payment thereof by said employer. It is found, however, that the conduct of respondent, as set forth above, constituted, overreaching and unprofessional conduct."

Mr. Hall contends the term "unprofessional conduct" is unconstitutionally vague as a basis for discipline of an employment agency as provided for under Business and Professions Code section 9993, subdivision (a), which reads: "Acts or omissions constituting grounds for disciplinary action by the bureau shall include, but shall not be limited to: (a) Engaging in unprofessional conduct."

Mr. Hall's contention is the cited statute, even read in conjunction with section 2857, subdivision (c)(3) of title 16 of the California Administrative Code, fails to give adequate notice of what conduct is prohibited. Section 2857, subdivision (c)(3) provides in part: "Conduct which shall be deemed unprofessional includes, but is not limited to, conduct which fails to conform to the following standards of ethical practice:

". . . . . . . . . . . . . . . . . .

"(c) Service charges and collections.

". . . . . . . . . . . . . . . . .

"(3) Account collection methods shall conform to ethical business standards."

That contention is confined to counts one, three and four.

█ Statutes, regardless whether criminal or civil in nature, must be sufficiently clear as to provide adequate notice of the prohibited conduct as well as to establish a standard of conduct which can be uniformly interpreted by the judiciary and administrative agencies (*Morrison* v. *State Board of Education,* 1 Cal.3d 214, 231 [82 Cal.Rptr. 175, 461 P.2d 375]).

In *McMurtry* v. *State Board of Medical Examiners,* 180 Cal.App.2d 760, 766 [4 Cal.Rptr. 910], the court commented: "It is well settled that 'a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law.' [Citations.] This principle applies not only to statutes of a penal nature but also to those prescribing a standard of conduct which is the subject of administrative regulation. [Citations.]"

In *Morrison* v. *State Board of Education, supra,* 1 Cal.3d 214, 220, the court commented, since the Legislature has employed general terms like "unprofessional conduct" in the authorization of disciplinary action against holders of a variety of licenses and certificates, it has not attempted to explicitly define the terms, but rather: " . . . have given [them] . . . more precise meaning by referring in each case to the particular profession . . . to which they were applicable." Since the Legislature hardly had intended that the same standards of conduct apply to all professions regardless of their varying duties, responsibilities and relationship to the public, the court concluded the characterization of conduct in the particular case must relate to the licensee's fitness to practice his profession. The court, in *Morrison,* stated at page 239: " 'The right to practice one's profession is sufficiently precious to surround it with a panoply of legal protection' [citation] and terms such as . . . 'unprofessional,' . . . constitute only lingual abstractions until applied to a specific occupation and given content by reference to fitness for the performance of that vocation."

Business and Professions Code section 9993, subdivision (a), construed in conjunction with section 2857 of title 16 of the California Administrative Code, relates the section 9993, subdivision (a) disciplinary ground of "engaging in unprofessional conduct" to a rather complete, substantive statement of the required standards of ethical practice relating to the fitness for the performance of a licensed employment agency.

California Administrative Code section 2857 of title 16 reads in its entirety:

"Conduct which shall be deemed unprofessional includes, but is not limited to, conduct which fails to conform to the following standards of ethical practice:

"(a) Relations With Employers.

"(1) A candidate's personal record, employment record, qualifications, and salary requirements shall be stated by the agency to the employer as accurately and fully as possible.

"(2) Candidates shall be referred to the employer for interview only with the prior authorization of the employer, which may be given verbally.

"(3) Confidential information relating to the business policy of employers which is imparted as an aid to the effective handling of their job requirements, shall be treated accordingly.

"(4) Letters, bulletins and resumes concerning applicants that are presented to employers shall represent bona fide candidates.

"(b) Advertising.

"(1) Advertising shall be factual.

"(2) Positions listed in the 'Help Wanted' columns of newspapers or other media shall refer to bona fide openings available at the time copy is given to these publications for insertion.

"(c) Service Charges and Collections.

"(1) No applicant or employer shall be held obligated for a fee until an offer and acceptance have been made between employer and applicant as a result of the agency's efforts.

"(2) Adjustments and refunds of fees shall be made promptly. ⌐

"(3) Account collection methods shall conform to ethical business standards."

■ Here, section 2857 provides sufficient notice to employment agencies of what kind of conduct is regulated and within the prohibition of the disciplinary ground of "unprofessional conduct," which, if granted standing by itself, would be ambiguous. Further, in time, on a case-by-case analysis by the judiciary, as well as the administrative agencies, those standards provided in section 2857 will become more definitive and substantive.

In regard to Mr. Hall's contention that Business and Professions Code section 9993, subdivision (a), construed in conjunction with California Administrative Code, title 16, section 2857, is unconstitutionally vague, he argues that the expository statement of section 2857, subdivision (c)(3) requiring that "[a]ccount collection methods shall conform to ethical business standards," is of little help in determining what behavior is legally proper. Thus, the issue is whether the agency's promulgated Administrative Code section 2857, subdivision (c)(3) is in itself sufficient notice of what collection practices are prohibited.

For consideration, the court in *McMurtry* v. *State Board of Medical Examiners, supra,* 180 Cal.App.2d 760, 767, stated: "[I]f the words used may be made reasonably certain by reference to the common law, to the legislative history of the statute involved, or to the purpose of that statute, the legislation will be sustained [citations]; and a standard fixed by language which is reasonably certain, judged by the foregoing rules, meets the test of due process 'notwithstanding an element of degree in the definition as to which estimates might differ.' [Citations.]" Further, even though all statutes regardless of nature must be sufficiently clear to provide fair notice of prohibited conduct: " 'Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources." (*American Civil Liberties Union* v. *Board of Education,* 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4].) (See also *Fletcher* v. *Western National Life Ins. Co.,* 10 Cal.App.3d 376, 405 [89 Cal.Rptr. 78, 47 A.L.R.3d 286].)

■ The requirement that "[a]ccount collection methods shall conform to ethical business standards" means such practices must at least conform to the ethical business standards of one who collects accounts (e.g. collection agency). If so, by referring to the respective legislation governing collection agencies, one finds Business and Professions Code section 6947, subdivision (j) provides that no licensee or employee of a collection agency shall "[e]ngage in any unfair or misleading practices or resort to any illegal means or methods of collection." Further, title 16 of the California Administrative Code section 627 on Ethical Practice and Conduct provides:

"Every licensee and its employees shall deal openly, fairly, and honestly in the conduct of the collection agency business. No licensee or employee shall engage in any unfair or misleading practices or resort to any oppressive, vindictive or illegal means or methods of collection.

"No licensee or employee shall collect or attempt to collect any interest or other charges, fees, or expenses incidental to the principal obligation unless such interest or incidental fees, charges, or expenses are legally chargeable against the debtor or have been judicially determined."

California Administrative Code, title 16, section 2857, subdivision (c)(3), is interpreted to impose upon a licensee of Bureau in seeking to enforce

collection of an agent's fee from an employee for whom the licensee acted as agent, the same standards of conduct as are imposed upon collection agencies.

■ Nor is section 2857, subdivision (c)(3) so ambiguous that one would be unable to realize that it prohibits the "systematic campaign of telephonic harassment" (sometimes in the evening) of employees, employers and others (counts one, three and four); the urging of the placement of pressure by an employer upon an employee for payment of a placement fee (count one); the placing of pressure first on an employee and later on the employer for the payment of a fee to which the agency was not entitled (count three); and, finally, the use of subterfuge to gain access to the employee at his place of employment (count four).

■ Also, California Administrative Code, title 16, section 2850, should be noted, as it provides: "Every licensee shall deal openly, fairly and honestly in the conduct of the employment agency business."

■ The superior court correctly applied the "independent judgment rule" in its mandamus review of Bureau's administrative decision in accordance with Code of Civil Procedure section 1094.5. Here, a vested right is involved since Mr. Hall is facing temporary suspension of his vocational license to operate an employment agency through the disciplinary action of a statewide administrative agency, Bureau (*Bixby* v. *Pierno,* 4 Cal.3d 130, 143 [93 Cal.Rptr. 234, 481 P.2d 242]).

As stated in *Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183], and reemphasized in *Moran* v. *Board of Medical Examiners,* 32 Cal.2d 301, 308 [196 P.2d 20], the court in *Yakov* v. *Board of Medical Examiners,* 68 Cal.2d 67, 72 [64 Cal.Rptr. 785, 435 P.2d 553]; summarized the role played by the appellate court in this type of case by stating: " 'In reviewing the evidence . . . all conflicts must be resolved in favor of the respondent, and all legitimate and reasonable inferences indulged in to uphold the verdict if possible . . . . When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. The rule quoted is as applicable in reviewing the findings of a judge as it is when considering a jury's verdict.' [Citations.] Thus, pursuant to *Moran,* the question before this court turns upon· whether the evidence reveals substantial support, contradicted or uncontradicted, for the trial court's conclusion that the weight of the evidence . . ." supports the finding, determination of issues and decision of the hearing officer.

Findings of fact and conclusions of law were not requested in the trial court. Under Code of Civil Procedure section 632 and rule 232(b) of the California Rules of Court at the superior court level, such factual findings and legal conclusions were waived.

"Thus, findings necessary to support the judgment will be implied and if there is any substantial evidence to support the judgment, it must be affirmed." (*Small* v. *Smith,* 16 Cal.App.3d 450, 455 [94 Cal.Rptr. 136].) (See also *McLaughlin* v. *Board of Medical Examiners,* 35 Cal.App.3d 1010, 1013 [111 Cal.Rptr. 353].)

Mr. Hall contends the hearing officer's findings of fact do not support the finding of a violation of Business and Professions Code section 9993 subdivision (c) in count three concerning Mercedes Ang. This section provides as a cause of discipline: ". . . violations or attempts to violate directly or indirectly or assisting in or abetting the violation of, or conspiracy to violate, any provision or term of this chapter."

Appearing in Bureau's supplemental accusation concerning count three, the finding above was based on the charge of an attempted ·violation of section 9975, which provides in part: "No employment agency shall accept a fee from any applicant for employment, or send any applicant for employment without having obtained orally or in writing, a bona fide order for employment . . . ."

■ The record contains sufficient evidence to support the finding Mr. Hall was subject to discipline under section 9993 subdivision (c) for an attempted violation of section 9975. After Mrs. Ang received from U. S. Financial the offer of employment, she notified Mr. Hall, at which time Mr. Hall attempted to gain payment of a placement fee for the position even though no order of employment had been filled out. Further, after learning from California State Employment Development Department employee, Mrs. Walker, that she had provided Mrs. Ang her referral to U. S. Financial, Mr. Hall made several telephone calls to U. S. Financial employees requesting payment of the placement fee.

Mr. Hall contends since the facts creating the basis of count four establish the applicant was responsible for a fee, there was no violation of the Business and Professions Code section 9993 subdivision (g). As a ground for disciplinary action by Bureau, the cited provision reads: "[M]aking false promises, misrepresentations in advertisements, or engaging in the practice of claiming or demanding fees, other compensa-

tion or commissions for services not rendered, within the contract agreed."

■ The record contains sufficient evidence for both the hearing officer and later the superior court to conclude Mr. Hall violated section 9993 subdivision (g) by demanding that Olbrich pay the fee, or be responsible for it, despite the fact the placement contract was between Mr. Hall and the employer.

Mr. Hall contends he did not violate section 9993 subdivision (g), since the contract he says was sent to Olbrich was one between the agency and the applicant as required by title 16 of the California Administrative Code, section 2879, which provides: "A contract or receipt as required by Section 9984 of the Code must be executed and delivered to the applicant before the applicant is sent to interview for any position. When a referral is made by telephone the agency shall execute the contract or receipt in triplicate and shall mail the original and duplicate to the applicant on the day the referral is made, with instructions that they be signed by the applicant and the duplicate returned to the agency. The date of mailing the contract or receipt to the applicant shall be entered thereon by the agency. The same contract or receipt must not be used for more than one referral."

Even though this contention would free Mr. Hall from a charge of wrongdoing under section 9993 subdivision (g), since the requests upon Olbrich would be derived from a contract between them, the argument is irrelevant here on appeal because the trial court and hearing officer had sufficient evidence (Olbrich's testimony) that the contract sent to Olbrich was a copy of the contract between Mr. Hall and Century, the employer.

Mr. Hall next contends the hearing officer's findings of fact do not support the legal finding he engaged in unprofessional conduct in count one. ■ There was sufficient evidence to support the findings of the hearing officer in the record appearing in the testimony of Mark Bryant and Mr. Clippinger. It may be inferred reasonably that Mr. Hall, through excessive telephonic harassment, caused the employer to draw up and send a letter terminating his business relationship with Mr. Hall. Such harassment was unprofessional conduct.

Mr. Hall further contends there was insufficient evidence to support a finding of unprofessional conduct in count three. ■ The record provides sufficient evidence to support the finding Mr. Hall engaged in

unprofessional conduct in regard to account collection methods not conforming to ethical business standards. Mr. Hall argues his telephone inquiries, necessary to determine whether a fee was due, did not constitute unprofessional conduct. However, since his telephone conversations with Mrs. Ang and Mrs. Walker had enlightened him as to the referral from the state Job Bank, the findings made below are proper because he nevertheless placed a number of calls to U. S. Financial officials demanding payment of the placement fee.

In count two, Mr. Hall was found to have violated Business and Professions Code section 9993 subdivision (h), for having failed to refund a fee when due. As grounds for disciplinary action, section 9993 subdivision (h), provides: "[F]ailure to comply with obligations of contracts or agreements provided for in Section 9985, or, except as otherwise provided in Section 9977, failure to make fee refunds when due thereunder within 10 working days after request by the applicant."

Mr. Hall contends that since he followed the established procedure of Business and Professions Code section 9974.7 subdivision (b), for contesting a fee refund, he had fulfilled his legal responsibility and Bureau was without power to determine whether the fee was due, since it became a question for the courts. Section 9974.7 subdivision (b), reads: "Alternatively, if the decision of the agency is not to make such refund, the agency shall notify the applicant and the bureau in writing, within such 10-day working period, as to the specific reasons or circumstances for which the refund is not made."

The authority of Bureau is explicit in regard to the investigation of and ascertainment whether a particular act or omission constitutes a ground for disciplinary action. Business and Professions Code section 9992 provides:

"Upon receipt of a complaint, or upon its own motion, the bureau shall ascertain whether or not the accused licensee has been guilty of an act or omission constituting a ground for disciplinary action and may make or cause to be made such investigation as it deems necessary in order to ascertain this fact. All inspections and investigations are to be performed by personnel of the department's Division of Investigation.

"Fee controversies which do not involve a violation of any provision of this chapter, or of a rule or regulation of the bureau, shall not be a proper subject for complaint under this section."

In the present case, Bureau's authority to investigate and ascertain whether Mr. Hall was guilty of an act constituting a ground for disciplinary action arose from a complaint from Mr. Rowray, the employee who claimed a refund was due. Bureau's authority was not terminated by Mr. Hall's letter contesting the fee refund; moreover, Bureau can "upon its own motion" investigate and ascertain whether a ground for disciplinary action has occurred. Since Bureau is provided with section 9993 subdivision (h), as a ground for disciplinary action, it has the requisite jurisdiction to determine a ground exists for such action.

Mr. Hall further argues it was " . . . patently unfair for the Bureau to determine, without the power so to do, that a refund is due, and then prosecute [him] when he disputed that the fee refund is owing and asks for his day in court on the question."

Mr. Hall has received not only his right to an administrative hearing, but also his day in court on the superior court level by his petition for a writ of mandamus, in passing upon which the superior court judge properly used the "independent judgment" rule.

In a separate but related argument, Mr. Hall contends that according to section 9974.7 subdivision (b), a refund was not due and therefore he did not violate section 9993 subdivision (h). Mr. Hall gave section 9974.7 subdivision (b) notice contesting there was anything due Rowray because Rowray had quit his employment without just cause; consequently, the fee was not required to be refunded within 10 days. However, after notification from Bureau of its investigation and determination a refund was necessary, the fee became due. The logical interpretation of the statutes is that section 9974.7 subdivision (b), draws the issues in a fee refund contest; while section 9992 gives Bureau authority to investigate and ascertain whether a disciplinary ground has occurred as enumerated in section 9993. Section 9993 subdivision (b), regarding failure to pay fee refunds, permits investigation and determination under section 9992, whether the fee refund is due, either upon receipt of a complaint or upon its own motion. Here Bureau's authority arose upon Rowray's complaint and Mr. Hall was subject to discipline for failure to pay the refund after Bureau had determined it was due.

Mr. Hall contends also that Bureau improperly attached to his pleadings an FEPC accusation against Willis B. Hall et al., in order to place Mr. Hall "in a bad light by showing allegations of further wrongdoing on his part."

Bureau denies the allegation and asserts it had no knowledge of how the portion of the FEPC file came to appear in the clerk's transcript. After reviewing the superior court file, no further information in regard to how this occurred could be obtained, except that it was filed January 20, 1975, four days before the superior court hearing.

The issue seems to be whether the inclusion of the cited "Accusation" in the superior court file for review by the trial judge constituted reversible error. In *Keating* v. *Basich Bros. etc. Co.*, 66 Cal.App.2d 258, 263 [151 P.2d 892], the court stated: "The general rule prevailing in California on this subject is this: Where there is competent independent evidence in the record which supports the judgment without recourse to the testimony erroneously admitted, generally the error is not prejudicial as it will be presumed on appeal that the trial judge considered and relied upon the competent evidence in making his findings and rendering the judgment."

 Since the judgment is supported by sufficient competent evidence, the inclusion of the accusation was not sufficiently prejudicial to dictate a reversal.

We note Mr. Hall has made a part of his opening brief a copy of a superior court decision, filed April 9, 1975, favorable to him in the FEPC matter. It would not be unreasonable to suppose, with the two mandate proceedings pending at the same time involving Mr. Hall, that one of the documents from one file was placed inadvertently in the file of the other.

 We observe additionally that Mr. Hall was agent for Bryant and Rowray in establishing contractual relationships between each of them and their respective employers. He had a duty to each of his principals not to endanger, for his own purposes, the relationships the establishment of which entitled him to his commissions.

It should have been obvious to him, as it is to us, that the placing of an excessive number of telephone calls to an employee at his employer's place of business, which are unrelated to the employer's business, will tend to endanger the employment relationship; and that telephone calls to the employer seeking his intervention in a dispute between the agent and his principal will tend to do the same.

Mr. Hall made approximately 10 calls to Mr. Clippinger, Bryant's employer, concerning Bryant, in some of which Mr. Hall inquired if

Clippinger knew Bryant had not paid the additional commission based upon a pay increase of either 25 or 50 cents per hour; and Mr. Hall asked if Clippinger wouldn't put a little pressure on Bryant. In one of the conversations Mr. Hall said they shouldn't have somebody around the office who didn't have the integrity to take care of his obligations.[2]

It may be noted as regards Mrs. Ang's case that although Mr. Hall personally made several calls to U. S. Financial, where Mrs. Ang was employed, he did not personally make any call to Touche, Ross. It was that company's suppositious referral of Mrs. Ang to U. S. Financial which was the cause of Mr. Hall's activity in the matter. As a witness at the administrative hearing, Mr. Hall said he had a secretary call Touche, Ross; he did not call that secretary as a witness, but said the secretary reported she had not been able to talk to the man at Touche, Ross to whom Mr. Hall had referred Mrs. Ang.

Concerning Olbrich, it is clear Mr. Hall was agent for the employer in finding someone to fill a vacancy. He collected a fee from the employer, although smaller than it might have been if the employment had continued longer. Mr. Hall did not have a right to attempt to make the employee, for whom he was not acting as agent in the matter, a guarantor of the employer's obligation. In doing so Mr. Hall placed a condition upon the performance of his duty to the employer, the condition being that the potential employee be one that would make such a guaranty.

The so-called additional evidence which Mr. Hall attempted to present was rejected by this court. The order denying his request to present such evidence has become final under California Rules of Court. The supposed evidence in any event would not affect our decision that Mr. Hall received a fair hearing before Bureau and before the trial court.

The judgment is affirmed.

Ault, Acting P. J., and Cologne, J., concurred.

A petition for a rehearing was denied October 22, 1976, and appellant's petition for a hearing by the Supreme Court was denied December 2, 1976.

---

[2] As quoted in the trial court by Mr. Hall's attorney.