[No. B064040. Second Dist., Div. Seven. Feb. 17, 1993.]

ROBERT WACHS et al., Plaintiffs and Appellants, v.
JAMES CURRY, as Acting Commissioner, etc., et al., Defendants and
Respondents.

**COUNSEL**

Katten, Muchin, Zavis & Weitzman, Howard L. Weitzman, David M. Bass and Abraham A. Rudy for Plaintiffs and Appellants.

H. Thomas Cadell, Jr., for Defendants and Respondents.

## OPINION

**JOHNSON, J.**—The Talent Agencies Act (Lab. Code, §§ 1700-1700.47)[1] requires persons who procure employment for artists in entertainment fields, such as motion pictures, television and radio, to be licensed as talent agents by the labor commissioner. The Act exempts from licensing those persons who procure only recording contracts. Plaintiffs, who are not licensed talent agents, challenge the licensing requirement on the grounds it violates their rights to due process and equal protection of the laws.

The trial court held the licensing requirement is constitutional and granted the labor commissioner's motion for summary judgment. The court subsequently entered judgment against plaintiffs. We affirm.

### FACTS AND PROCEEDINGS BELOW

Plaintiffs Wachs and X Management, Inc., provide personal management services to artists and entertainers. Plaintiffs entered into a written contract to provide personal management to entertainer Arsenio Hall in return for 15 percent of Hall's earnings from his activities in the entertainment industry during the term of the contract. The contract recites "You [Hall] have not retained our personal management firm under this agreement as an employment agent or a talent agent. This firm has not offered or attempted or promised to obtain employment or engagement for you and this firm is not obligated, authorized or expected to do so."

Subsequently, Hall filed a petition to determine controversy under section 1700.44 of the Act alleging Wachs had acted as an unlicensed talent agent in procuring and attempting to procure employment for him and requesting the labor commissioner order Wachs to return all moneys collected from Hall or Hall's employers in connection with any of Hall's activities in the entertainment industry. Wachs filed an answer to the petition generally denying Hall's allegations.

While Hall's petition was pending before the labor commissioner, Wachs and X Management filed the present action against the commissioner and other state officials charged with enforcing the Act. The complaint alleges the licensing provisions of the Act are unconstitutional on their face and as applied because no rational basis exists for providing an exemption from the licensing requirement to those who procure recording contracts but not for those who procure other contracts in the entertainment industry and because

---

[1] All future references are to the Labor Code unless otherwise noted. The Talent Agencies Act is referred to as the Act.

it cannot be determined from the language of the Act which activities require licensing as a talent agent. Wachs seeks a judgment declaring the licensing provisions of the Act unconstitutional for the reasons stated and enjoining defendants from enforcing those provisions.

On the state's motion for summary judgment the trial court determined there were no triable issues of material fact and the licensing provisions were constitutional. The court granted the motion and subsequently entered judgment for defendants.

I. THE FACIAL CONSTITUTIONALITY OF THE STATUTE IS RIPE FOR ADJUDICATION.

■ The first question to be decided is whether there is a justiciable controversy between the parties.

In the trial court defendants argued a ruling on the constitutionality of section 1700.4 "as applied" was premature because the commissioner had not yet rendered a decision on Hall's petition and any such decision was subject to review in a trial de novo in the superior court. (§ 1700.44, subd. (a).) Wachs responded a justiciable controversy existed because, as a person engaged in the occupation of personal management of entertainers, he was a member of the class of persons affected by the licensing provisions of the Act. Furthermore, he argued, the labor commissioner did not have the power to declare a provision of the Act unconstitutional.

While this appeal was pending, the commissioner rendered his decision in the Hall matter, ruling in favor of Hall. Wachs requested a trial de novo in that matter. Wachs has now changed his position on justiciability in the present case and argues on appeal the constitutionality of section 1700.4 should be determined in the first instance by the trial court in the trial de novo in the Hall matter.

As a person engaged in the personal management of artists, Wachs has standing to challenge the *facial* constitutionality of section 1700.4 because he is a person aggrieved by its alleged vagueness and a member of the class against whom it allegedly discriminates. (*Cranston* v. *City of Richmond* (1985) 40 Cal.3d 755, 765 [221 Cal.Rptr. 779, 710 P.2d 845]; *Prison Law Office* v. *Koenig* (1986) 186 Cal.App.3d 560, 565, 567 [233 Cal.Rptr. 590]; and see *Estate of Horman* (1971) 5 Cal.3d 62, 78 [95 Cal.Rptr. 433, 485 P.2d 785].) The defendants are correct, of course, that in this proceeding Wachs and X Management cannot challenge the particular *application* of the statute to them because no facts regarding a particular application are before us.

We will proceed therefore to rule only on the claims section 1700.4 is unconstitutional on its face because the licensing exemption has no rational basis and the terms of the licensing requirement are so patently vague they provide no standard *at all*.

## II. THE TRIAL COURT PROPERLY DENIED PLAINTIFFS' REQUEST FOR MORE TIME TO DO DISCOVERY.

■ Plaintiffs contend the trial court erred in refusing to allow them additional time for discovery before hearing and determining defendants' motion for summary judgment. ■ A determination of this issue depends, in part, on the respective burdens borne by the parties challenging and defending the constitutionality of a statute.

When the defendant is the party moving for summary judgment it has the burden of negating a necessary element of the plaintiff's case or establishing an affirmative defense. (*Estate of Fisher* (1988) 198 Cal.App.3d 418, 423 [244 Cal.Rptr. 5].) In the area of economic regulation, a legislative classification does not deny equal protection if the "distinctions drawn by a challenged statute bear some rational relationship to a conceivable legitimate state purpose." (*Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765, 784 [87 Cal.Rptr. 839, 471 P.2d 487].) Thus, in a case where the state moves for summary judgment, the state meets its burden by demonstrating some conceivably rational basis for its classification. "A distinction in legislation is not arbitrary if any set of facts reasonably can be conceived that would sustain it." (*Dribin* v. *Superior Court* (1951) 37 Cal.2d 345, 352 [231 P.2d 809, 24 A.L.R.2d 864].) The state need not *prove* such facts exist; the existence of facts supporting the legislative judgment is presumed. (*Ibid.*; *National Organization for Reform of Marijuana Laws* v. *Gain* (1979) 100 Cal.App.3d 586, 594 [161 Cal.Rptr. 181].) Once the state posits a rational basis for its classification, the burden shifts to the plaintiff to demonstrate the classification bears no rational relationship to any conceivable legitimate state interest as a matter of law (see *Hays* v. *Wood* (1979) 25 Cal.3d 772, 789 [160 Cal.Rptr. 102, 603 P.2d 19]) or to demonstrate there are triable issues of fact which, if resolved in favor of the plaintiff, would negate any rational basis for the classification. (Cf. *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 22-23 [112 Cal.Rptr. 786, 520 P.2d 10].)

■ In contending they should have been given additional time to gather affidavits and conduct discovery, plaintiffs rely on Code of Civil Procedure section 437c, subdivision (h) which provides:

"If it appears from the affidavits submitted in opposition to a motion for summary judgment . . . that facts essential to justify opposition may exist

but cannot, for reasons stated, then be presented, the court shall deny the motion, or order a continuance to permit affidavits to be obtained or discovery to be had or may make any other order as may be just."

Under this section, a continuance is mandatory *if* the conditions recited in the section are met. (*Danieley* v. *Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 127 [266 Cal.Rptr. 749].) The affidavit must show: (1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts. (*American Continental Ins. Co.* v. *C & Z Timber Co.* (1987) 195 Cal.App.3d 1271, 1280 [241 Cal.Rptr. 466]; *Coast-United Advertising, Inc.* v. *City of Long Beach* (1975) 51 Cal.App.3d 766, 771-772 [124 Cal.Rptr. 487].)

The trial court properly concluded the affidavit plaintiffs submitted failed to provide sufficient justification for a continuance. The affidavit, signed by plaintiffs' counsel, states in relevant part:

"We have worked to make contact with various experts in the entertainment, talent agent and talent manager industries in order to gather information to support the allegation regarding the constitutionality of the Talent Agencies Act. We are in the process of interviewing members from the Entertainment Commission as well as hiring experts who will opine on the numerous pitfalls and ambiguities and irrationality of the Act at issue herein.

"We also intend to conduct depositions of personal managers and talent agents to demonstrate the nature of the industries affected by the Act and to serve document requests to the Labor Commissioner as well as the legislature seeking to obtain documents, reports and studies pertaining to the reasons for the apparent irrational classification under the Act. . . .

"I believe that it will take a period of at least four to six months . . . to complete discovery in this case."

The affidavit states plaintiffs were searching for "experts who will opine on the numerous pitfalls and ambiguities and irrationality of the Act at issue herein." The opinions of experts as to the pitfalls, ambiguities and irrationality of the Act are not only not essential to opposing the motion, they are irrelevant. When it comes to legislation involving economics and social welfare, the only opinion that counts is the Legislature's. The constitutionality of such laws does not depend on a judicial assessment of the wisdom or skill with which the Legislature has addressed the particular topic. So long as the legislation is rationally related to a legitimate state interest, "it is not

our concern whether the Legislature has adopted what we might think to be the wisest and most suitable means of accomplishing its objectives." (*Lelande* v. *Lowery* (1945) 26 Cal.2d 224, 234 [157 P.2d 639, 175 A.L.R. 1109].) Plaintiffs also state they were "seeking to obtain documents, reports and studies" from the labor commissioner and the Legislature "pertaining to the reasons for the . . . classification under the Act." Again, such evidence is irrelevant. ■ "[T]he validity of a legislative act does not depend on the subjective motivation of its draftsmen but rests instead on the objective effect of the legislative terms." (*County of Los Angeles* v. *Superior Court (Burroughs)* (1975) 13 Cal.3d 721, 727 [119 Cal.Rptr. 631, 532 P.2d 495].) (2c) In any event, it should not take three months to gather this legislative and administrative material. There is no showing in the affidavit of what steps, if any, plaintiffs had taken to gather this material.

The affidavit also states plaintiffs "intend to conduct depositions of personal managers and talent agents to demonstrate the nature of the industries affected by the Act. . . ." Presumably this evidence was intended to demonstrate a triable issue of fact as to whether there is any distinction between the activities of those who procure recording contracts and those who procure other forms of employment for the artists they represent. Although this evidence could go to the question of whether a rational basis exists for the Act's licensing requirements, the affidavit contains no showing such evidence may exist or why it could not have been obtained in the three months between the state's filing of the motion for summary judgment and the hearing. Contrary to the view plaintiffs' attorney expressed in his affidavit, it was not necessary for plaintiffs to complete their discovery in order to raise a triable issue of fact as to the activities involved in procuring recording contracts and procuring other engagements. A single affidavit from a person who does both would have been sufficient. Indeed, it would seem plaintiff Wachs himself could have supplied such an affidavit.

The statutory grounds for a continuance not appearing, the trial court properly proceeded with the hearing on the motion for summary judgment.

III. A RATIONAL BASIS EXISTS FOR EXEMPTING THOSE WHO PROCURE RECORDING CONTRACTS FROM THE LICENSING REQUIREMENTS OF THE ACT.

■ As we noted above, the state enjoys a wide latitude in economic and social legislation. The conventional "rational relationship" test applies in cases involving occupational licensing. (*D'Amico* v. *Board of Medical Examiners, supra*, 11 Cal.3d at p. 17.)

The Act provides, "No person shall engage in or carry on the occupation of a talent agency without first procuring a license therefor from the Labor

Commissioner." (§ 1700.5, subd. (a).) The Act defines "talent agency" as a "person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist . . . ." (§ 1700.4, subd. (a).) The Act, however, contains an exemption from its licensing requirement for those who procure employment in the form of recording contracts. This provision states: "the activities of procuring, offering, or promising to procure recording contracts for an artist or artists shall not of itself subject a person or corporation to regulation and licensing under this chapter." (*Ibid.*)

Plaintiffs, who are not licensed talent agents, contend the licensing provisions of the Act are unconstitutional because there is no rational basis for exempting from the licensing requirement those who engage in procuring recording contracts but not other kinds of contracts.

The provision exempting the procurement of recording contracts was added to the Act in 1982 with a sunset provision of January 1, 1986. (Stats. 1982, ch. 682, § 1, p. 2814; Stats. 1984, ch. 553, § 1, p. 2185.) At the same time, the Legislature created the California Entertainment Commission to study and recommend revisions to the Act. (Stats. 1982, ch. 682, § 4, p. 2816.) The commission, after two years of study, submitted its recommendations to the Legislature which adopted them with minor language changes. (Stats. 1986, ch. 488, p. 1804; see O'Brien, *Regulation of Attorneys Under California's Talent Agencies Act: A Tautological Approach to Protecting Artists* (1992) 80 Cal. L. Rev. 471, 493-495 [hereafter O'Brien].)

One of the issues the commission studied was whether any changes should be made to the provision exempting persons who procure recording contracts for an artist. The majority of the commission recommended this exemption should be retained in the Act. The commission gave the following reasons for its recommendation.

"A recording contract is an employment contract of a different nature from those in common usage in the industry involving personal services. The purpose of the contract is to produce a permanent and repayable showcase of the talents of the artist. In the recording industry, many successful artists retain personal managers to act as their intermediaries, and negotiations for a recording contract are commonly conducted by a personal manager, not a talent agent. Personal managers frequently contribute financial support for the living and business expenses of entertainers. They may act as a conduit between the artist and the recording company, offering suggestions about the use of the artist or the level of effort which the recording company is expending on behalf of the artist . . . . [¶] However, the problems of

attempting to license or otherwise regulate this activity arise from the ambiguities, intangibles and imprecisions of the activity. [¶] The majority of the Commission concluded that the industry would be best served by resolving these ambiguities on the side of preserving the exemption of this activity from the requirements of licensure." (Rep. of the Cal. Entertainment Com. (1985) pp. 13-14.) On the commission's recommendation, the exemption for those who procure recording contracts became permanent. (Stats. 1986, ch. 488, § 2, p. 1804; O'Brien, *supra*, 80 Cal.L.Rev. at p. 495.)

We believe the report from the Legislature's own commission of experts provides a sufficiently rational basis for the exemption from the licensing requirement. Numerous decisions support the proposition persons in the same general type of business may be classified differently where their methods of operation are not identical. (*Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108, 121 [132 Cal.Rptr. 796], and cases cited therein.)

## IV. THE LICENSING REQUIREMENTS OF THE ACT ARE NOT VOID FOR VAGUENESS.

 Plaintiffs contend the term "occupation of procuring [employment]" as used in section 1700.4, subdivision (a) does not sufficiently define the conduct which requires a license. Thus, persons such as plaintiffs, who provide a variety of services to artists and entertainers, cannot determine in advance what conduct they may lawfully engage in without a license. As a result, plaintiffs operate at great financial risk because a subsequent finding by the labor commissioner they "procured" employment without a license may relieve the client of any obligation to repay funds advanced to promote the client's career and entitle the client to restitution of all fees paid the agent. (See *Buchwald* v. *Superior Court* (1967) 254 Cal.App.2d 347, 351 [62 Cal.Rptr. 364]; O'Brien, *supra*, 80 Cal.L.Rev. at p. 491.)

Although the Act contains no criminal penalty for the unlicensed procuring of employment, the financial penalties to which the unlicensed agent is exposed are clearly sufficient to raise due process concerns. "Statutes, regardless whether criminal or civil in nature, must be sufficiently clear as to provide adequate notice of the prohibited conduct as well as to establish a standard of conduct which can be uniformly interpreted by the judiciary and administrative agencies." (*Hall* v. *Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 491 [138 Cal.Rptr. 725].)

In *Hall* v. *Bureau of Employment Agencies, supra*, 64 Cal.App.3d at page 494, the court summarized the test a statute must pass to satisfy due process:

" '[I]f the words used may be made reasonably certain by reference to the common law, to the legislative history of the statute involved, or to the purpose of that statute, the legislation will be sustained . . . ; and a standard fixed by language which is reasonably certain, judged by the foregoing rules, meets the test of due process "notwithstanding an element of degree in the definition as to which estimates might differ." [Citations.]' Further, even though all statutes regardless of nature must be sufficiently clear to provide fair notice of prohibited conduct: ' " 'Reasonable certainty is all that is required. A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' [Citation.] It will be upheld if its terms may be made reasonably certain by reference to other definable sources." ' " [Citations omitted.]

◼ Resort to the dictionary definitions of the words at issue and the legislative purpose and history of the Act convinces us the statute has an objective content from which ascertainable standards of conduct can be fashioned.

The relevant dictionary definition of "occupation" is "the principal business of one's life: a craft, trade, profession or other means of earning a living." (Webster's New Internat. Dict. (3d ed. 1981) p. 1560.)

The history of the Act further illuminates the legislative intent with respect to activities requiring a talent agents license.

Regulation of what we now refer to as talent agencies originated with the Artists' Managers Act of 1943. (Stats. 1943, ch. 329, p. 1326.) The Artists' Managers Act defined an artist's manager as "a person, who engages in the occupation of advising, counseling, or directing artists in the development or advancement of their professional careers and who procures, offers, promises or attempts to procure employment or engagements for an artist only in connection with and as a part of the duties and obligations of such person under a contract with such artist by which such person contracts to render services of the nature above mentioned to such artist." (*Id.*, at § 1, p. 1326.)

With the adoption of the Act (Stats. 1978, ch. 1382, p. 4575), the Legislature made a significant change in the definition of the covered activities. The Act provided, "A talent agency is hereby defined to be a person or corporation who engages in the occupation of procuring, offering, promising, or attempting to procure employment or engagements for an artist or artists. Talent agencies may, in addition, counsel or direct artists in the development of their professional careers." (*Id.*, at § 6, p. 4576.)

Comparison of the activities regulated in the two acts shows a marked change of emphasis from the counseling function to the employment procurement function. Under the Artists' Managers Act the focus was on persons who engaged in "the occupation of advising, counseling or directing artists" in the "development or advancement" of their careers and who engaged in procuring employment "only in connection with and as a part of" their duties as advisor and counselor. Under the Act, the focus is on persons engaged "in the occupation of procuring . . . employment or engagements for an artist . . . ." These persons "may, in addition, counsel or direct artists in the development of their professional careers."

We conclude from the Act's obvious purpose to protect artists seeking employment and from its legislative history, the "occupation" of procuring employment was intended to be determined according to a standard that measures the significance of the agent's employment procurement function compared to the agent's counseling function taken as a whole. If the agent's employment procurement function constitutes a significant part of the agent's business as a whole then he or she is subject to the licensing requirement of the Act even if, with respect to a particular client, procurement of employment was only an incidental part of the agent's overall duties. On the other hand, if counseling and directing the clients' careers constitutes the significant part of the agent's business then he or she is not subject to the licensing requirement of the Act, even if, with respect to a particular client, counseling and directing the client's career was only an incidental part of the agent's overall duties. What constitutes a "significant part" of the agent's business is an element of degree we need not decide in this case. (*Hall* v. *Bureau of Employment Agencies, supra,* 64 Cal.App.3d at p. 494.)

Plaintiffs' concentrate their attack on the alleged vagueness of the word "procure." They posit numerous examples of conduct which they claim have little if any relationship to the purpose of the Act but which the labor commissioner has held, or might hold, constitutes "procuring" employment. However, as we noted above, the only question before us is whether the word "procure" in the context of the Act is so lacking in objective content that it provides no standard *at all* by which to measure an agent's conduct. (*Cranston* v. *City of Richmond, supra,* 40 Cal.3d at p. 765.)

To "procure" means "to get possession of: obtain, acquire, to cause to happen or be done: bring about." (Webster's New Internat. Dict., *supra,* at p. 1809.)

The term "procure" in connection with employment is used in numerous California statutes.[2] The fact none of these statutes has ever been challenged is some evidence the term is well understood.[3]

We recognize the Legislature's failure to define the term "procure" for purposes of section 1700.4 has been criticized by several commentators. (O'Brien, *supra*, 80 Cal.L.Rev. at pp. 496-499; Johnson & Lang, *The Personal Manager in the California Entertainment Industry* (1979) 52 So.Cal.L.Rev. 375, 387-388; Lane, *Fees or Famine: Could California's Personal Managers Survive Regulation?* (Winter 1990) J. of Arts Management & Law 5, 23-24.) None of these commentators have suggested, however, the term "procure" is so lacking in objective content as to render the Act facially unconstitutional.

We conclude the term "occupation of procuring [employment]" is not "so patently vague and so wholly devoid of objective meaning that it provides no standard *at all.*" (*Cranston* v. *City of Richmond, supra,* 40 Cal.3d at p. 765; italics in original.) Whether the Act is unconstitutional as applied to plaintiffs is a question for another day.

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

---

[2]See, e.g., Business and Professions Code sections 9997, subdivisions (e) and (f), 9998.1, subdivision (c); Civil Code sections 1812.501, subdivision (a)(1)(A), 1812.509, subdivision (d); Elections Code section 29620; Labor Code section 1540.

[3]In the only case in which the term was challenged on vagueness grounds, the court did not reach the issue, holding instead a business which only provides information about available job opportunities does not offer to "procure" employment for any of its customers. (*Sacramento Data Processing Etc. Sales* v. *Department of Consumer Affairs* (1982) 129 Cal.App.3d 348, 354 [181 Cal.Rptr. 51].)