Filed 1/4/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| NISEI FARMERS LEAGUE et al., | F075102 |
| Plaintiffs and Appellants, | (Super. Ct. No. 16CECG02107) |
| v. | |
| CALIFORNIA LABOR AND WORKFORCE DEVELOPMENT AGENCY et al., | **OPINION** |
| Defendants and Respondents. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County. Donald S. Black, Judge.

Gibson, Dunn & Crutcher, Jesse A. Cripps, Perlette Michèle Jura, Joseph C. Hansen and Theodore M. Kider for Plaintiffs and Appellants.

Ogletree, Deakins, Nash, Smoak & Stewart, Robert R. Roginson, Jack S. Sholkoff and Kathleen J. Choi for California Trucking Association as Amicus Curiae on behalf of Plaintiffs and Appellants.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Mark R. Beckington and R. Matthew Wise, Deputy Attorneys General, for Defendants and Respondents.

-ooOoo-

Plaintiffs Nisei Farmers League and California Building Industry Association filed this action in the trial court challenging the constitutional validity of Labor Code[1] section 226.2, a recently enacted law articulating wage requirements applicable where an employer uses a piece-rate method of compensating its employees. The complaint was brought against the state labor agencies and agency officials responsible for enforcing the wage law (defendants).[2] In their complaint, plaintiffs alleged among other things that provisions of section 226.2 were so uncertain as to render the statute void for vagueness. Other constitutional challenges to the validity of section 226.2 were premised on allegations that the statute would be applied retroactively. Defendants demurred to the complaint, arguing that the wording of section 226.2 was not unconstitutionally vague and that the other constitutional challenges asserted in plaintiffs' complaint were without merit because the statute was not retroactive. The trial court agreed with defendants' analysis, sustained the demurrer without leave to amend, and entered a judgment of dismissal. In doing so, the trial court also declined to grant plaintiffs' request for declaratory relief relating to an affirmative defense created by the statute. Plaintiffs appeal from the judgment.

Based on our review of the pertinent issues, we conclude that plaintiffs failed to allege an adequate basis for finding the statute to be facially unconstitutional. We also conclude that denial of the declaratory relief requested was appropriate. Thus, the demurrer was properly sustained without leave to amend. For these and other reasons more fully explained below, the judgment of the trial court is hereby affirmed.

---

[1]     Unless otherwise indicated, all further statutory references are to the Labor Code.

[2]     The defendants named in the complaint are: California Labor and Workforce Development Agency; David M. Lanier, in his official capacity as Secretary of California Labor and Workforce Development Agency; Department of Industrial Relations; Christine Baker, in her official capacity as Director of the Department of Industrial Relations; Division of Labor Standards Enforcement; Julie A. Su, in her official capacity as California Labor Commissioner.

2.

## LEGAL BACKGROUND AND PROCEDURAL HISTORY

<u>Plaintiffs Represent Employers Using Piece-Rate Wage Systems</u>

Plaintiffs are organizations that claim to represent thousands of California employers in the agricultural and construction industries. Many of plaintiffs' member employers pay their employees on a piece-rate basis because that method of compensation creates incentives for higher productivity. Under a piece-rate system, employees are not paid by the hour, but rather are compensated based on activities, tasks, or units of production completed (see *Vaquero v. Stoneledge Furniture, LLC* (2017) 9 Cal.App.5th 98, 109, fn. 7; *Jackpot Harvesting Co.*, *Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 135 (*Jackpot Harvesting*)), such as the quantity of produce picked, the number of yards of carpet installed, or the number of miles driven. Plaintiffs point out there are numerous studies showing that piece-rate systems which reward employee productivity generally lead to higher pay for employees, significantly increased productivity, and cost savings to consumers. Plaintiffs allege that their " 'members' employees regularly earn through piece-rate compensation sums that far exceed minimum wage or what they could expect to earn through hourly compensation." California has long recognized that wages may be paid on a piece-rate basis. (§ 200 [defining "wages" as including all amounts for labor performed by employees "whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation"].)

According to plaintiffs, the employers they represent design their piece-rate wage systems to cover all work performed by their employees throughout the work day, including rest breaks. Allegedly, these employers are careful to ensure that piece-rate compensation fully complies with minimum wage requirements. They ensure compliance with the minimum wage law at the end of each pay period "by dividing the hours worked by the payment made and making any additional payment necessary to 'true up' the total compensation to reach at least minimum wage." Plaintiffs further

3.

allege this piece-rate method of paying wages (including the method used to ensure compliance with minimum wage law) was understood by employers to be in accordance with established law, was the settled practice in the industry, and was consistent with defendants' own publications providing guidance to employers.

The 2013 Court of Appeal Decisions

In 2013, two watershed Court of Appeal decisions upended the expectations of any employers who may have assumed that a piece-rate system carried out in the manner described above would fully comply with the law. These two decisions were *Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.App.4th 36 (*Gonzalez*) and *Bluford v. Safeway Inc*. (2013) 216 Cal.App.4th 864 (*Bluford*).

In *Gonzalez*, automotive service technicians were paid piece-rate compensation based on the completion of repair tasks. The plaintiffs in *Gonzalez*, a class of former technicians who had worked for the defendant employer, claimed that they should be paid a separate hourly minimum wage for time spent during their workshifts waiting for vehicles to repair and performing other nonrepair tasks directed by the employer, even though the employer supplemented the technicians' compensation at the end of the pay period to cover any shortfall between the piece-rate compensation and minimum wage for all hours worked. (*Gonzalez*, *supra*, 215 Cal.App.4th at p. 40.) The Court of Appeal concluded the plaintiffs' legal position was correct and held that they were "entitled to separate hourly compensation for time spent waiting for repair work or performing other nonrepair tasks directed by the employer during their workshifts .…" (*Id*. at pp. 40–41.) As explained in *Gonzalez*, even though the employer in that case paid its employees on a piece-rate basis rather than hourly, the employees' nonproductive work time that was not part of the compensated piece-rate activity of repairing cars had to be separately compensated to satisfy minimum wage law, since the minimum wage law applied to each

4.

hour worked.[3]  Accordingly, the employer's practice of averaging hourly wages at the end of the pay period (by dividing total compensation paid by the total hours worked over the course of the pay period) was insufficient to show compliance with the law.  (*Id*. at pp. 40–42, 48–49.)

In so holding, the *Gonzalez* court expressly relied on the reasoning of *Armenta v. Osmose, Inc*. (2005) 135 Cal.App.4th 314, 317–324 (*Armenta*).  (*Gonzalez*, *supra*, 215 Cal.App.4th at pp. 40, 45–53.)  In *Armenta*, where an employer paid its employees hourly wages for specified "productive" work time only, and did not pay the employees for other "nonproductive" work time, the appellate court concluded that the employer's minimum wage obligation could not be met by averaging wages over the total hours worked in the pay period; rather, the California minimum wage law attached to each hour worked by the employees, including the unpaid nonproductive hours.  (*Armenta*, *supra*, 135 Cal.App.4th at pp. 317, 321–324.)  In finding *Armenta's* analysis of California's minimum wage law to be persuasive, *Gonzalez* rejected the employer's argument that *Armenta*, as an hourly wage case, should not be applied to workers who are compensated on a piece-rate basis.  Instead, *Gonzalez* directly applied *Armenta* to the piece-rate compensation system before it, following *Armenta's* rule that averaging an employee's wages for all hours spent on the job during the pay period (where the employee's work time included both paid/productive hours and unpaid/nonproductive hours) would not

---

[3]     We note that California's minimum wage requirements are set forth in a series of wage orders promulgated by the Industrial Welfare Commission.  (*Gonzalez*, *supra*, 215 Cal.App.4th at p. 43; see *Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1026 [wage and hour claims governed by Labor Code and wage orders].)  In *Gonzalez*, the relevant wage order, known as Wage Order No. 4, provides:  "Every employer shall pay to each employee, on the established payday for the period involved, not less than the applicable minimum wage for all hours worked in the payroll period, whether the remuneration is measured by time, piece, commission, or otherwise."  (*Gonzalez*, *supra*, at p. 44, citing Cal. Code Regs., tit. 8, § 11040, subd. 4(B).)  An identically-worded wage order is in place regarding minimum wages for agricultural workers.  (See Cal. Code Regs, tit. 8, § 11140, subd. 4(B).)

suffice to show compliance with the minimum wage law for each hour worked. (*Gonzalez*, *supra*, 215 Cal.App.4th at pp. 40–41, 48–49, also citing *Cardenas v. McLane Foodservices, Inc*. (C.D.Cal. 2011) 796 F.Supp.2d 1246, 1252 [holding that "a piece-rate formula that does not compensate directly for all time worked does not comply with California Labor Codes, even if, averaged out, it would pay at least minimum wage for all hours worked"; see also *Vaquero v. Stoneledge Furniture, LLC, supra,* 9 Cal.App.5th at p. 110 [noting "[a]ll of the federal courts that have considered this issue of California law have reached a similar conclusion and have held employers must separately compensate employees paid by the piece for nonproductive work hours"].)

In *Bluford*, the second of the two 2013 decisions impacting piece-rate compensation practices, a Safeway truck driver sued Safeway for failure to pay its truck drivers for their rest periods. It was alleged that under Safeway's piece-rate wage system, compensation was paid to truck drivers based on miles driven and the performance of certain tasks, but the system did not provide any payment for rest periods. (*Bluford*, *supra*, 216 Cal.App.4th at p. 870.) Safeway responded that payment for rest periods was indirectly provided as part of its overall piece-rate system by being subsumed in the mileage rates it paid to its drivers. (*Id*. at p. 871.) The Court of Appeal rejected Safeway's argument, explaining as follows: "[U]nder the rule of *Armenta* [, *supra*,] 135 Cal.App.4th 314, 323 rest periods must be separately compensated in a piece-rate system. Rest periods are considered hours worked and must be compensated. [Citations.] Under the California minimum wage law, employees must be compensated for each hour worked at either the legal minimum wage or the contractual hourly rate, and compliance cannot be determined by averaging hourly compensation. [Citations.] [¶] Thus, contrary to Safeway's argument, a piece-rate compensation formula that does not compensate separately for rest periods does not comply with California minimum wage law." (*Bluford*, *supra*, 216 Cal.App.4th at p. 872.) Further, in rejecting Safeway's argument that payment for expected rest periods was intended to be built into the mileage rates it

6.

paid, the Court of Appeal explained: "Even if that is so, it is akin to averaging pay to comply with the minimum wage law instead of separately compensating employees for their rest periods at the minimum or contractual hourly rate, and, as we have explained, it is not allowed under California labor law." (*Ibid.*)

Enactment of Section 226.2

In response to the *Gonzalez* and *Bluford* decisions, the California Legislature, through Assembly Bill No. 1513, enacted section 226.2, which among other things sought to clarify the statutory requirements for piece-rate compensation by codifying the *Gonzalez* and *Bluford* decisions. (Stats. 2015, ch. 754, § 4, eff. Jan. 1, 2016; see Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 1513 (2015-2016 Reg. Sess.) Sept. 3, 2015; see also, *Jackpot Harvesting, supra,* 26 Cal.App.5th at pp. 135, 146.) The new law took effect on January 1, 2016, and not only codified the holdings of *Gonzalez* and *Bluford* by "providing for separate payment for nonproductive work time and for rest periods when employees are compensated on a piece-rate basis," but also created certain "safe harbors" that would provide an affirmative defense to employers regarding past failures to separately pay piece-rate employees for rest periods and nonproductive time. (*Certified Tire & Auto Service Center Wage & Hour Cases* (2018) 28 Cal.App.5th 1, 12; see *Jackpot Harvesting*, *supra*, 26 Cal.App.5th at pp. 143–148.)

Why was the affirmative defense included in the new law? Apparently, many employers had not come to terms with the unexpected changes to piece-rate law created by the *Gonzalez* and *Bluford* decisions, and thus the affirmative defense was added to protect employers from potential statutory penalties and damages on the condition they promptly make certain payments of previously (i.e., pre-2016) unpaid rest periods and nonproductive time. (See *Jackpot Harvesting*, *supra*, 26 Cal.App.5th at pp. 145–146 [noting legislative committee comments on rationale for affirmative defense]; see also *Fowler Packing Company, Inc. v. Lanier* (9th Cir. 2016) 844 F.3d 809, 812 ["[t]o protect California businesses from unforeseen liability arising from *Gonzalez* and *Bluford*, … AB

7.

1513 also created a 'safe harbor' that provided employers with an affirmative defense against claims alleging failure to pay previously for nonproductive work time" "so long as they pay, no later than December 15, 2016," certain sums specified in the statute].)

Turning to the specific language of the statute, section 226.2 subdivision (a)(1) states that piece-rate employees "shall be compensated for rest and recovery[4] periods and other nonproductive time separate from any piece-rate compensation." The term "other nonproductive time" is defined as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis." (§ 226.2.) Further, subdivision (a) specifies that the separate compensation for rest and recovery time must be at an hourly rate that is no less than the applicable minimum wage, and in some instances must be greater than minimum wage, depending on a statutory formula. (§ 226.2, subd. (a)(3)(A), (B).) Similarly, the separate compensation for employees' other nonproductive time must be no less than the applicable minimum wage. (§ 226.2, subd. (a)(4).) As should be evident from our discussion above, the provisions of section 226.2 subdivision (a), comprise the Legislature's effort to codify the *Gonzalez* and *Bluford* decisions.

The affirmative defense provided to employers of piece-rate workers regarding the employers' past (pre-2016) failures to separately pay for rest/recovery periods and other nonproductive time is set forth in section 226.2, subdivision (b), which states in relevant part as follows:

> "(b) Notwithstanding any other statute or regulation, the employer … shall have an affirmative defense to any claim or cause of action for recovery of wages, damages, liquidated damages, statutory penalties, or civil penalties, … based solely on the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive

---

**4** When certain employees work outdoors in temperatures exceeding 95 degrees Fahrenheit, they are entitled to "recovery" periods. (*Jackpot Harvesting*, *supra*, 26 Cal.App.5th at p. 134, citing Cal. Code Regs., tit. 8, § 3395, subd. (e)(6).)

time for time periods prior to and including December 31, 2015, if, by no later than December 15, 2016, an employer complies with all of the following:

"(1)  The employer makes payments to each of its employees, except as specified in paragraph (2), for previously uncompensated or undercompensated rest and recovery periods and other nonproductive time from July 1, 2012, to December 31, 2015, inclusive, using one of the formulas specified in subparagraph (A) or (B):

"(A)  The employer determines and pays the actual sums due together with accrued interest calculated in accordance with subdivision (c) of Section 98.1.

"(B)  The employer pays each employee an amount equal to 4 percent of that employee's gross earnings in pay periods in which any work was performed on a piece-rate basis from July 1, 2012, to December 31, 2015, inclusive, less amounts already paid to that employee, separate from piece-rate compensation, for rest and recovery periods and other nonproductive time during the same time, provided that the amount by which the payment to each employee may be reduced for amounts already paid for other nonproductive time shall not exceed 1 percent of the employee's gross earnings during the same time.

"[¶] … [¶]

"(3) By no later than July 1, 2016, the employer provides written notice to the department of the employer's election to make payments to its current and former employees in accordance with the requirements of this subdivision ….

"[¶] … [¶]

"(4) The employer calculates and begins making payments to employees as soon as reasonably feasible after it provides the notice referred to in paragraph (3) and completes the payments by no later than December 15, 2016, to each employee to whom the wages are due …."

In summary, section 226.2 subdivision (a) clarifies the statutory requirements for piece-rate compensation by confirming that, going forward from the law's January 1,

2016 effective date, employers must compensate their piece-rate employees for rest and recovery periods and other nonproductive time "*separate from* any piece-rate compensation." (§ 226.2, subd. (a)(1), italics added.) Meanwhile, section 226.2 subdivision (b) creates a safe harbor affirmative defense for those piece-rate employers who voluntarily elect to make certain payments of previously (i.e., pre-2016) unpaid compensation for rest/recovery periods and other nonproductive time. The affirmative defense would require payment by the employer to all affected employees by December 15, 2016, of "previously uncompensated or undercompensated rest and recovery periods and other nonproductive time from July 1, 2012, to December 31, 2015," with the amount of the employer's payment to be calculated using one of two alternative formulas: (a) "actual sums due" plus accrued interest, or (b) a formula based on 4 percent of each affected employee's gross earnings in the relevant pay periods. (§ 226.2, subd. (b)(1)(A) & (B).)

Additionally, to qualify for the affirmative defense, an employer was required to provide written notice to the department "no later than July 1, 2016" of the employer's election to make the specified payments to employees in accordance with the provisions of the affirmative defense. (§ 226.2, subd. (b)(3).)

Plaintiffs' Complaint Filed

On June 27, 2016, three days before the deadline for claiming the defense, plaintiff Nisei Farmers League filed its original complaint seeking injunctive and declaratory relief on the ground (among others) that certain material provisions of section 226.2 were unconstitutionally vague in violation of due process. Moreover, allegedly the law was so unclear that it was impossible for the employers represented by plaintiff to know what would be expected of them to comply with the terms of the affirmative defense or whether they should even make the election to commit to the requirements of the affirmative defense.

10.

On July 25, 2016, the trial court denied Plaintiff Nisei Farmers League's motion for preliminary injunction.

On September 15, 2016, an amended complaint was filed that named California Building Industry Association as an additional plaintiff, but otherwise made substantially the same allegations (the complaint). This was the operative pleading for purposes of the present appeal.

We briefly describe the causes of action set forth in the complaint. The first cause of action is for declaratory relief and seeks a judicial declaration that (i) the statutory phrase "other nonproductive time" is unconstitutionally void for vagueness, and that (ii) the statutory phrase "actual sums due," the meaning of which was and is allegedly in dispute, should be construed to have the particular meaning urged by plaintiffs. The second, third and fourth causes of action similarly claim that key wording of section 226.2—e.g., "other nonproductive time"—is so vague that the statute allegedly violates constitutional due process, fails to provide adequate notice to employers of how to comply with the statute's requirements and will result in arbitrary deprivation of property to employers. Further, the fifth, sixth and seventh causes of action allege that assuming the statutory phrase "actual sums due" in subdivision (b) of section 226.2 is interpreted to create retroactive liability and to retroactively impair past contractual relationships, the statute would violate due process, the takings clause and contracts clause of United States Constitution. Finally, the eighth cause of action for injunctive relief, which is premised on the same constitutional transgressions alleged in the preceding causes of action, seeks to enjoin the operation of the statute and/or to prevent or postpone the statutory deadlines for employers to pursue the affirmative defense set forth in section 226.2, subdivision (b).

Trial Court Sustains Defendants' Demurrer

Defendants filed a general demurrer to the complaint. Regarding the second, third and fourth causes of action claiming section 226.2 is unconstitutionally vague, defendants argued in their demurrer that the statutory language is sufficiently clear, especially in

11.

light of existing case precedent giving context to the terminology, and in any event, plaintiffs failed to meet their heavy burden of demonstrating that the statute is facially unconstitutional. As to the fifth, sixth and seventh causes of action, which alleged constitutional invalidity based on section 226.2's retroactive application, defendants persuasively argued that the statute was not retroactive, and therefore such causes of action were without merit. As to the first cause of action for declaratory relief and the eighth cause of action for injunctive relief, defendants argued in their demurrer that these causes of action were based upon the same flawed allegations as the other six causes of action—i.e., that section 226.2 is void for vagueness and imposes retroactive punishment. Because these foundational allegations were not correct, it was argued that the first cause of action and the eighth cause of action likewise failed to state a viable claim.

On November 30, 2016, the trial court heard oral argument on the demurrer. Following the hearing, the trial court issued its order sustaining the demurrer without leave to amend. The order reflected the trial court's agreement with the reasoning presented in defendants' demurrer.

Partial Declaratory Relief Denied

By motion filed prior to the demurrer hearing, plaintiffs requested partial declaratory relief regarding the meaning of the statutory term "actual sums due" as that term is used in subdivision (b) of section 226.2. By separate written order issued on the same day as the trial court's demurrer ruling, the trial court denied the motion for partial declaratory relief as procedurally improper since there is no such distinct pretrial motion available for resolution of declaratory relief claims.

Plaintiffs' Appeal

On January 27, 2017, plaintiffs filed a notice of appeal from the judgment entered by the trial court following the order sustaining demurrer without leave to amend. Plaintiffs' appeal focuses on two core issues as to which the trial court allegedly erred and, unless corrected, allegedly make it impossible for their member employers to know

12.

if they are following the law: (i) Whether the term "other nonproductive time" is void for vagueness as was alleged in plaintiffs' facial constitutional challenge to section 226.2, and (ii) whether declaratory relief for the purpose of clarifying the meaning of the allegedly disputed term "actual sums due" should have been granted by the trial court and/or whether this court should grant such relief.

## DISCUSSION

### I. Standard of Review

The present appeal involves questions of law to which we apply de novo review, including our consideration of issues relating to the interpretation or constitutionality of a statute (*Finberg v. Manset* (2014) 223 Cal.App.4th 529, 532), and our review of an order sustaining a demurrer without leave to amend (*Wilson v. Hynek* (2012) 207 Cal.App.4th 999, 1007). In reviewing an order sustaining a demurrer, we exercise our independent judgment on whether the complaint states a cause of action. (*Palacin v. Allstate Ins. Co.* (2004) 119 Cal.App.4th 855, 861.) We assume the truth of all properly pleaded facts, but not contentions, deductions or conclusions of law or fact, and we give the complaint a reasonable interpretation. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We also consider matters which may be judicially noticed. (*Ibid*.) "The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] It is error, however, for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory." (*Palestini v. General Dynamics Corp.* (2002) 99 Cal.App.4th 80, 86.)

### II. Demurrer Was Properly Sustained as to Constitutional Challenges to Statute

In the present appeal, plaintiffs contend the trial court erred in sustaining demurrer to the causes of action in plaintiffs' complaint that were premised upon plaintiffs' assertion that section 226.2 is unconstitutionally vague on its face. As explained below, we believe the trial court was correct in sustaining demurrer to the subject causes of action; that is, we conclude section 226.2 is not unconstitutionally vague.

13.

A.  Standard for Facial Constitutional Challenge

Before proceeding, we briefly summarize the standard by which we evaluate a facial constitutional challenge to the validity of a statute.  In considering such a challenge, we consider only the text of the measure itself, not its actual application to the particular facts and circumstances of an individual.  (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.)  "In adjudicating such constitutional issues, our duty is clear:  'We do not consider or weigh the economic or social wisdom or general propriety of the [challenged statute].  Rather, our sole function is to evaluate [it] legally in the light of established constitutional standards.' " (*Calfarm Ins. Co. v. Deukmejian* (1989) 48 Cal.3d 805, 814 (*Calfarm*).)  " '[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity.  Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*Id.* at p. 814.)  If the validity of the measure is " 'fairly debatable,' " it must be sustained.  (*Id.* at p. 815.)  To repeat, " '[t]he courts will *presume* a statute is constitutional unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity.' " (*City of Los Angeles v. Superior Court* (2002) 29 Cal.4th 1, 10–11, italics added.)

"The standard for a facial constitutional challenge to a statute is exacting." (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 218.)  Under "the strictest requirement for establishing facial unconstitutionality," the challenger must demonstrate that "the statute 'inevitably pose[s] a present total and fatal conflict with applicable constitutional prohibitions.' " (*Guardianship of Ann S.* (2009) 45 Cal.4th 1110, 1126.)  Where, as here, the statute is challenged on the ground that it is unconstitutionally vague, it is not enough to show the statute is ambiguous, uncertain or that it may require judicial construction or clarification:  " 'Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear.…  In order to succeed on a facial

14.

vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct … a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague *in all of its applications.*" ' [Citations.]" (*People v. Kelly* (1992) 1 Cal.4th 495, 533–534; accord, *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1116 (*Acuna*); see *Rutherford v. California* (1987) 188 Cal.App.3d 1267, 1276 ["statutes will be upheld unless their unconstitutionality as to vagueness clearly, positively and unmistakably appears"].)

B. Overview of Void-for-Vagueness Principles

To satisfy due process, a statute must be sufficiently clear to provide adequate notice of the prohibited or required conduct referred to therein. (*In re Sheena K.* (2007) 40 Cal.4th 875, 890 [a statute must be sufficiently clear to give "fair warning" or " 'adequate notice to those who must observe its strictures' "]; *Schweitzer v. Westminster Investments, Inc.* (2007) 157 Cal.App.4th 1195, 1206; *Hall v. Bureau of Employment Agencies* (1976) 64 Cal.App.3d 482, 491.) Thus, a statute will be deemed void for vagueness if it either forbids or requires the doing of an act in terms so vague that persons of common intelligence must necessarily guess as to its meaning and differ as to what is required. (*In re Sheena K.*, *supra*, 40 Cal.4th at p. 890; *Schweitzer v. Westminster Investments, Inc.*, *supra*, 157 Cal.App.4th at p. 1206.) Although these principles apply to both civil and criminal statutes, it is recognized that greater leeway is permitted regarding civil enactments, such as statutory regulation of economic or business matters, because the consequences of imprecision are qualitatively less severe. (*Hoffman Estates v. Flipside, Hoffman Estates* (1982) 455 U.S. 489, 498–499; see also *Ford Dealers Assn. v. Department of Motor Vehicles* (1982) 32 Cal.3d 347, 366 [standard of certainty higher for criminal statutes than civil statutes].)

At the same time, it is well established that the mere presence of some degree of ambiguity or uncertainty in the wording of a statute does not make the statute void for

vagueness. "A statute is not unconstitutionally vague merely because its meaning 'must be refined through application.' " (*Colgan v. Leatherman Tool Group, Inc.* (2006) 135 Cal.App.4th 663, 692, citing *Ford Dealers Assn. v. Department of Motor Vehicles, supra,* 32 Cal.3d at p. 367.) The fact that a statute contains "one or more ambiguities requiring interpretation does not make the statute unconstitutionally void on its face." (*In re Jorge M.* (2000) 23 Cal.4th 866, 886.) Generally speaking, unanswered questions about particular problems of future application do not render a statute unconstitutional on its face; rather, when such situations arise in which the statutory language must be interpreted and applied, they can be "resolved by trial and appellate courts 'in time-honored, case-by-case fashion,' by reference to the language and purposes of the statutory schemes as a whole." (*Evangelatos v. Superior Court* (1988) 44 Cal.3d 1188, 1202.)

In *Acuna*, *supra*, 14 Cal.4th 1090, the California Supreme Court set forth two core principles, endorsed by the United States Supreme Court, that are "reliable guides for applying the doctrine [of vagueness] in particular cases." (*Id*. at p. 1116.) These two principles are (1) "that abstract legal commands must be applied in a specific *context*," and (2) "the notion of '*reasonable* specificity' [citation] or ' " '[r]easonable certainty.' " ' " (*Id*. at pp. 1116–1117.) As to the first principle, the Supreme Court noted that "[a] contextual application of otherwise unqualified legal language," such as reading the words of the statute in light of its legislative purpose, "may supply the clue to a law's meaning, giving facially standardless language a constitutionally sufficient concreteness." (*Id*. at p. 1116.) As to the second principle, the Supreme Court reiterated the established rule that no more than a "reasonable degree of certainty" is required of statutory language, explaining that " 'few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government

16.

inevitably limit the specificity with which legislators can spell out prohibitions.…'
[Citation.]"  (*Id*. at p. 1117.)

Furthermore, it is important to note that a statute will be deemed to have a reasonable degree of certainty and thereby overcome a vagueness challenge " 'if any reasonable and practical construction can be given its language or if its terms may be made reasonably certain by reference to [its legislative history or purposes].' "  (*Acuna*, *supra*, 14 Cal.4th at p. 1117, quoting *In re Marriage of Walton* (1972) 28 Cal.App.3d 108, 116.)  Thus, if the words of a statute may be made reasonably certain by reference to the common law, the legislative history of the statute involved, or the purpose of that statute, the legislation will be sustained.  (*Hall v. Bureau of Employment Agencies, supra,* 64 Cal.App.3d at p. 494.)  "When assessing a facial challenge to a statute on vagueness grounds, courts should where possible construe the statute in favor of its validity and give it a reasonable and practical construction in accordance with the probable intent of the Legislature; a statute will not be declared void for vagueness or uncertainty if any reasonable and practical construction can be given its language.  [Citation.]  The statute must nevertheless be sufficiently clear to give fair warning of the prohibited or required conduct, although a statute not sufficiently clear may be made more precise by judicial construction and application of the statute in conformity with the legislative objective.  [Citation.]"  (*Schweitzer v. Westminster Investments, Inc*., *supra*, 157 Cal.App.4th at p. 1206.)

C.  <u>Plaintiffs' Void-for-Vagueness Challenge Fails</u>

Applying the principles outlined above, we conclude that the statutory phrase "other nonproductive time" in section 226.2 is not unconstitutionally vague.  The statue explicitly defines "other nonproductive time" to mean "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis."  (§ 226.2.)  The language of the statutory definition is reasonably clear and specific and provides adequate notice of the nature of

17.

the conduct that is being described. Moreover, the concept of "other nonproductive time" did not arise in a vacuum. As we discussed previously herein at length, section 226.2, subdivision (a), was directly premised on the *Gonzalez* and *Bluford* Court of Appeal decisions relating to how piece-rate wages must be paid. In fact, section 226.2, subdivision (a), was enacted to clarify the statutory requirements for piece-rate compensation by codifying the *Gonzalez* and *Bluford* decisions. (See Sen. Com. on Labor and Industrial Relations, Analysis of Assem. Bill No. 1513 (2015-2016 Reg. Sess.) Sept. 3, 2015; see also *Jackpot Harvesting, supra,* 26 Cal.App.5th at pp. 135, 146.) Thus, the *Gonzalez* and *Bluford* decisions provide helpful context for understanding the meaning of section 226.2. Since *Bluford* addressed separate compensation for rest periods, which is not at issue in this appeal, we will focus our attention here on *Gonzalez*.

In *Gonzalez, supra*, 215 Cal.App.4th 36, where piece-rate wages were paid to automobile service technicians based on repair tasks performed, the court held that time spent by the service technicians under the employer's control doing *nonrepair* (i.e., nonproductive) activities, such as waiting for a vehicle to repair or performing other nonrepair functions at the employer's direction, had to be separately compensated. (*Gonzalez, supra*, 215 Cal.App.4th at pp. 40–41.) In so holding, *Gonzalez* relied on principles set forth in *Armenta, supra*, 135 Cal.App.4th 314 regarding the application of the minimum wage law. (*Gonzalez, supra*, 215 Cal.App.4th at pp. 40, 45–49.) In *Armenta*, the employer classified its employees' work hours as either productive or nonproductive, depending on whether the hours were directly related to maintaining utility poles in the field. Productive work hours were paid at an hourly rate, but the remaining work hours—deemed nonproductive—were not compensated. (*Armenta, supra*, 135 Cal.App.4th at pp. 317–318.) The employer had sought to comply with minimum wage law by means of averaging total compensation over the total number of hours worked (including productive and nonproductive time). *Armenta* held that to comply with California's minimum wage law the employer was required to compensate

18.

its employees for each hour worked, including nonproductive time; thus, the employer may not simply divide the total hours worked into the amount the employee was paid for productive time to arrive at an average hourly wage. (*Armenta*, *supra*, 135 Cal.App.4th at pp. 317, 322–324.) The holding in *Gonzalez*, including its application of *Armenta* in a piece-rate wage context, provided the foundation for the Legislature's requirement in section 226.2, subdivision (a)(1), that "other nonproductive time" be separately compensated. As such, *Gonzalez* furnishes a fact-based concrete illustration of what was meant by the term "other nonproductive time," thereby providing further clarity and certainty to the statute. (See *In re Marriage of Walton*, *supra*, 28 Cal.App.3d at p. 116 [statutory terms may be made reasonably certain by reference to its legislative history, purposes or other definable sources]; *Hall v. Bureau of Employment Agencies*, *supra*, 64 Cal.App.3d at p. 494 [case law or common law may help to render statute reasonably certain].) Thus, as the trial court correctly concluded in sustaining the demurrer in this case, the statutory language is discernable of meaning both in terms of plain English and in the context of the statutory scheme and applicable case law upon which the statute was based.

Nonetheless, plaintiffs argue the statute is unconstitutionally vague because it does not specifically define or spell out whether "other nonproductive time" that is not "directly related" to the activity being compensated includes (see § 226.2), among other things, such activities as "traveling between work sites, attending meetings, doing warm-up calisthenics, putting on protective gear, sharpening tools, waiting for additional equipment, or waiting for weather to change." Plaintiffs' argument fails because the constitution does not require that degree of detail in the writing of statutes. Section 226.2, like most statutes, "must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded." (*Boyce*

19.

*Motor Lines v. United States* (1952) 342 U.S. 337, 340.) Not only is detailed specificity unnecessary, but it is recognized that the requirement of reasonable certainty "does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." (*People v. Deskin* (1992) 10 Cal.App.4th 1397, 1400.) Thus, even though a statute's wording is flexible and manageably brief, rather than meticulously specific, it is sufficient if it gives fair notice to those to whom it is directed. (*In re John V.* (1985) 167 Cal.App.3d 761, 768–769.) That is the case here, since, for the reasons discussed hereinabove, section 226.2 provides a reasonable degree of certainty in its definition of the term "other nonproductive activity." As was observed by the Supreme Court: " 'The presumptive validity of a legislative act militates against invalidating a statute merely "… because difficulty is found in determining whether certain marginal offenses fall within … [its] language." ' [Citations.] We are not obligated to 'consider every conceivable situation which might arise under the language of the statute' [citation], so long as it may be given 'a reasonable and practical construction in accordance with the probable intent of the Legislature' [citation]." (*People v. Smith* (1984) 35 Cal.3d 798, 810.)

Furthermore, although it is true that a piece-rate employer will have to implement the statutory requirement (that other nonproductive worktime be separately compensated) within the particular setting of its own employees' work hours, job activities and the specific piece-rate wage involved, the need for reasonable and good faith application of a statutory standard is not grounds for finding it unconstitutionally vague. "A statute is not unconstitutionally vague merely because its meaning 'must be refined through application.' " (*Colgan v. Leatherman Tool Group, Inc., supra,* 135 Cal.App.4th 663, 692 [noting further that " '[t]he law is replete with instances in which a person must … govern his conduct by such nonmathematical standards as "reasonable," "prudent," "necessary and proper," "substantial," and the like.…' "].) Nor does the phrase "not directly related" as used within the definitional wording "time under the employer's

20.

control … *not directly related* to the activity being compensated on a piece-rate basis" (§ 226.2, emphasis added) render the statute impermissibly vague. As pointed out by defendants, the term "directly related" is used in a variety of other statutes (see, e.g., Gov. Code, § 89513 [use of campaign funds must be "directly related" to a political, legislative or governmental purpose]; Ed. Code, § 35145.5 [intent of Legislature that members of the public be able to place matters "directly related" to school district business on the agenda of board meetings]), and courts have had no difficulty reasonably applying the phrase in these other contexts. (See, e.g., *Mooney v. Garcia* (2012) 207 Cal.App.4th 229, 235–236.) In conclusion, while there may be some uncertainty as to the application of section 226.2 in some circumstances, nevertheless, we believe the statutory definition of the term "other nonproductive time" as "time under the employer's control, exclusive of rest and recovery periods, that is not directly related to the activity being compensated on a piece-rate basis" (§ 226.2) provides an adequately discernable standard that possesses a reasonable degree of specificity. Thus, it is not unconstitutionally vague.

D. Causes of Action Premised on Constitutional Violations Were Insufficient

Because plaintiffs have failed to allege an adequate basis for showing that section 226.2 is unconstitutionally vague, the trial court properly sustained the demurrer to the causes of action premised upon that claim. This includes the second, third and fourth causes of action in plaintiffs' complaint, along with a portion of the first cause of action for declaratory relief.

As to the fifth, sixth and seventh causes of action, which asserted claims for violation of due process, the takings clause and the contracts clause of the United States Constitution, each of these claims was expressly premised upon plaintiffs' allegation that the statute would be applied *retroactively*. Specifically, the fifth cause of action alleged a due process violation arising from "retroactive punishment," the sixth cause of action alleged a takings clause violation based on "severe retroactive liability," and the seventh cause of action alleged a contract clause violation based on substantial impairment of

21.

prior and existing contractual relationships. The crux of these claims was that, with respect to the affirmative defense set forth in subdivision (b) of section 226.2 available to employers that are willing to pay "actual sums due" for previously (i.e., pre-2016) unpaid compensation for employees' rest periods and "other nonproductive time," the statute imposed new substantive requirements on employers *retroactively*.

However, contrary to plaintiffs' allegations, nothing in the statutory language remotely suggests such a retroactive construction. Rather, as the trial court correctly explained: "Section 226.2 merely provides an affirmative defense for employers who follow the specified procedures and pay amounts already owed for piece-work prior to the start date. There is nothing in the Section that revises how the amounts owed for prior work is calculated.… [¶] [Thus,] [t]he statute as written does not appear to apply retroactively. Since it does not apply retroactively, then Plaintiff has not stated a cause of action" in the fifth, sixth and seventh causes of action. We agree with the trial court's assessment of the plain meaning of the statute on this issue. Under the statute's clear terms, the affirmative defense relates to "the employer's failure to timely pay the employee the compensation due for rest and recovery periods and other nonproductive time for time periods prior to and including December 31, 2015." (§ 226.2, subd. (b).) Accordingly, for purposes of the affirmative defense set forth in section 226.2 subdivision (b), the "actual sums due" for previously unpaid compensation would be the sums due under the existing law prior to 2016—that is, the amounts that were due under the law in effect at the time the obligation to pay the compensation accrued.[5] Thus, plaintiffs have failed to show that section 226.2 imposed new legal requirements on employers that were made effective retroactively.

---

[5] We note that the prior law in effect would obviously include, from their issuance dates in 2013, the *Gonzalez* and *Bluford* decisions.

22.

As to the fifth, sixth and seventh causes of action, plaintiffs' appeal has failed to present any cogent argument to support the alleged claims of unconstitutional retroactivity, and only a perfunctory mention is made of these claims, which we treat as abandoned. In any event, " '[A]ll presumptions and intendments favor the validity of a statute and mere doubt does not afford sufficient reason for a judicial declaration of invalidity. Statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears.' " (*Calfarm, supra,* 48 Cal.3d at p. 814.) If the validity of the measure is " 'fairly debatable,' " it must be sustained. (*Id.* at p. 815.) Nothing has been alleged or argued by plaintiff to overcome the presumption of statutory validity; nor is unconstitutionality clearly or unmistakably apparent from the statute itself. From all that has been said, we conclude that plaintiffs have failed to meet the exacting standards for a facial constitutional challenge to a statute. (See *Today's Fresh Start, Inc. v. Los Angeles County Office of Education, supra,* 57 Cal.4th at p. 218.) Thus, the demurrer to the fifth, sixth and seventh causes of action was properly sustained by the trial court.

Finally, the eighth cause of action for injunctive relief was based on the same defective constitutional challenges to the validity of the statute as were alleged in the preceding causes of action, and therefore the eighth cause of action was equally defective and failed to state a cause of action for injunctive relief. The demurrer to the eighth cause of action was correctly sustained. Therefore, all of the causes of action in plaintiffs' complaint that were premised on facial unconstitutionality of the statute were properly dismissed by the trial court.

This leaves only the portion of the first cause of action for declaratory relief seeking a judicial declaration relating to the construction of the phrase "actual sums due." We deal with this aspect of the declaratory relief cause of action below.

**III. Declaratory Relief Cause of Action**

A portion of plaintiffs' first cause of action for declaratory relief sought a judicial declaration to resolve an alleged dispute as to the meaning of the phrase "actual sums

23.

due" set forth in the affirmative defense provided to employers under section 226.2, subdivision (b). As noted previously herein, section 226.2 subdivision (b) created a safe harbor affirmative defense for those piece-rate employers who voluntarily elect to make certain payments of previously (i.e., pre-2016) unpaid compensation for rest/recovery periods and other nonproductive time. According to the terms of the statute, the affirmative defense would require payment to all affected employees by December 15, 2016 of "previously uncompensated or undercompensated rest and recovery periods and other nonproductive time from July 1, 2012, to December 31, 2015," and the particular amount of the employer's payment was to be calculated using one of two alternative formulas: (a) "*actual sums due*" plus accrued interest, or (b) a formula based on 4 percent of each affected employee's gross earnings in the relevant pay periods. (§ 226.2, subd. (b)(1)(A) & (B), italics added.)

There were two orders made by the trial court relating to the subject declaratory relief cause of action which are discussed in plaintiffs' appeal: (i) an order denying plaintiffs' motion for declaratory relief, and (ii) the order sustaining demurrer without leave to amend. We briefly describe both orders. Prior to the hearing on the demurrer, plaintiffs filed a motion for partial declaratory relief as a means of obtaining an expedited judicial determination of the legal dispute raised in that cause of action concerning the statutory phrase "actual sums due." The trial court denied the motion on the procedural ground that there is no stand-alone dispositive motion for declaratory relief authorized by the Code of Civil Procedure or elsewhere, and the trial court pointed out that if plaintiffs wanted to pursue such relief by a motion procedure it should have done so under the recognized process of a motion for judgment on the pleadings and/or a motion for summary judgment or adjudication. The trial court noted further that the motion was not brought under the court's inherent power to adopt, when necessary, any suitable method or practice in the interest of justice (see, e.g., *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 967 [discussing courts' inherent powers]), and we think that implicit in the

24.

overall analysis of the trial court's order was the fact that there did not appear to be any need to adopt a new procedure where existing statutory procedures were suitable and readily available. *In any event*, by merely declining to rule, the trial court made no disposition at that time of the declaratory relief cause of action. Thus, the declaratory relief cause of action remained intact until the trial court sustained the demurrer without leave to amend. For this reason, it appears that the trial court's order sustaining the demurrer is the critical order for purposes of this appeal. If the demurrer was properly sustained without leave to amend, then we need not consider the ruling on the motion for declaratory relief. In its order sustaining demurrer without leave to amend, in addressing the declaratory relief cause of action relating to the statutory phrase "actual sums due," the trial court explained that the demurrer was being sustained because the nature of the particular declaration sought by plaintiffs did not appear to be an issue or controversy which it could properly decide but would be better directed to the Court of Appeal.

In the present appeal relating to the subject declaratory relief cause of action, plaintiffs argue that the trial court erred in refusing to grant the motion for declaratory relief and erred in sustaining the demurrer. Furthermore, plaintiffs argue that we should proceed to grant the requested declaratory relief in our decision on these issues. In response, defendants argue that the purported "dispute" is not real or actual because the pre-existing law that would inform employers of the meaning of the term "actual sums due" is clear. Defendants point out that a party may not contrive a dispute simply because they disagree with a law. As will be seen in the discussion below, we agree with the trial court's outcome of sustaining the demurrer to this cause of action without leave to amend, but we do so for somewhat different reasons. We also clarify some basic matters bearing on the allegedly disputed issues, but ultimately refrain from going beyond that because it would entail making an advisory opinion.

A.  Relevant Allegations of First Cause of Action for Declaratory Relief

In the first cause of action, plaintiffs alleged that defendants were taking the position that "actual sums due" requires paying for pre-2016 piece-rate work based on broad interpretations of *Bluford* and *Gonzalez*.  Plaintiffs alleged that they disagree with defendant's position that *Bluford* and *Gonzalez* applied to all piece-rate employment systems.  Allegedly, "[p]laintiffs contend, and [d]efendants dispute," that "actual sums due" for pre-2016 piece-rate work does not require any additional or separate payment if plaintiffs' members "compensated employees on a piece-rate basis that equaled at least the minimum wage for all hours worked."  The cause of action alleged that the disputed issues included (i) "Whether an employer can set the piece rate to cover all work performed"; (ii) "Whether 'actual sums due' requires payment to be determined by the law as it existed before 2016 or to be determined by the law after January 1, 2016 and based on Section 226.2's prospective requirements"; and (iii) "Whether non-piece-rate work or 'other nonproductive time' from July 1, 2012 through December 31, 2015 must be paid separately and in addition to payments already made as part of 'actual sums due,' when employees already were compensated on a piece-rate basis that covered the time worked and equaled at least the minimum wage for all hours worked."

Plaintiffs' opening brief attempts to distill the issues and requests that we rule that under pre-2016 law, an employer could "design a piece rate to cover all work performed (including rest breaks), and limit, distinguish, or depart from *Gonzalez* and *Bluford* to the extent they suggest otherwise."

B.  Some Basic Issues Clarified

Preliminarily, as we recognized in our discussion above, the statutory phrase "actual sums due" for previously unpaid compensation plainly refers to the sums that were due under the *preexisting* law—that is, compensation due under the law in effect prior to 2016.  The briefing in this appeal reflects that all parties are in agreement with this basic acknowledgement of the nature of this law.

We would also clarify one additional point. To a significant extent, the crux of the dispute as alleged by plaintiffs is the question of *what the pre-2016 law was* regarding piece-rate compensation, since an answer to that question would be necessary to determine the actual sums that were due at that former time. The clear answer to that question is that the piece-rate compensation law generally in effect prior to the January 1, 2016, enactment of section 226.2 was *Gonzalez* and *Bluford*, at least from the time of the issuance of those decisions in 2013. Both were premised on important minimum wage law policy articulated in *Armenta*, and both applied those principles to the piece-rate setting even though the employer may have attempted to satisfy minimum wage law through post-hoc averaging. (See *Gonzalez*, *supra*, 215 Cal.App.4th at pp. 40–41, 44–49; *Bluford*, *supra*, 216 Cal.App.4th at pp. 870–873.) Generally speaking, then, after *Gonzalez* and *Bluford* were final, employers would have been required to separately compensate piece-rate employees for nonproductive/uncompensated time (i.e., time spent on non-piece-rate activities directed by the employer) and for rest periods. Also, we note that this conclusion is consistent with the main point for creating the affirmative defense, which was to provide a safe harbor to employers who were caught off guard by the changes caused by the *Gonzalez* and *Bluford* decisions to the piece-rate law. (See *Jackpot Harvesting*, *supra*, 26 Cal.App.5th at pp. 145–146 [noting legislative committee comments on rationale for affirmative defense]; see also *Fowler Packing Company, Inc. v. Lanier, supra,* 844 F.3d at p. 812 ["[t]o protect California businesses from unforeseen liability arising from *Gonzalez* and *Bluford*, … AB 1513 also created a 'safe harbor' that provided employers with an affirmative defense against claims alleging failure to pay previously for nonproductive work time" "so long as they pay, no later than December 15, 2016," certain sums specified in the statute].)

C. No Cause of Action for Advisory Opinion

Plaintiffs' declaratory relief cause of action sought a declaration of a more definitive nature than what we have clarified above. In essence, plaintiffs requested a

27.

judicial declaration that, under pre-2016 law, employers could devise and implement piece-rate systems in which *Gonzalez* and *Bluford* were distinguishable, and thus, an employer prior to 2016 could permissibly design and implement a piece-rate wage to cover all work performed, such that no separate or additional compensation for rest breaks or so-called nonproductive time would be required.

Assuming, without deciding, that was potentially the case, we believe the issue would have to be decided on a case-by-case basis, depending on the particular facts and circumstances of the employer's piece-rate system, including among other things the nature of the piece-rate wage, the nature of the tasks required of the employees during the workday, and whether each hour was accounted for and actually compensated, including rest breaks.[6] Thus, giving plaintiffs the benefit of the doubt on this question, we do not have enough facts to render the kind of decision requested, and to do so based on generalized hypotheticals and propositions rather than on a concrete case and controversy would be a granting of an advisory opinion, which we may not do. (*Pacific Legal Foundation v. California Coastal Com.* (1982) 33 Cal.3d 158, 170–171; *Del Cerro Mobile Estates v. City of Placentia* (2011) 197 Cal.App.4th 173, 186; *Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 540.) Declaratory relief requires the existence of an actual controversy involving a justiciable question. (*Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582.) A request for an advisory opinion does not qualify. (*Ibid.*; see *Selby Realty Co. v. City of*

---

[6]     We note that in *Oman v. Delta Air Lines, Inc*. (9th Cir. 2018) 889 F.3d 1075, 1077, 1080–1081, where the employer argued its credit-based compensation formula complied with California's minimum wage law, the federal court certified the following question to the California Supreme Court, which the California Supreme Court agreed to resolve:  "Does the *Armenta/Gonzalez* bar on averaging wages apply to a pay formula that generally awards credit for all hours on duty, but which, in certain situations resulting in higher pay, does not award credit for all hours on duty?" (*Oman v. Delta Air Lines, Inc*. (July 11, 2018, S248726) 2018 Cal. Lexis 5042 [granting request for certification of issues].)

*San Buenaventura* (1973) 10 Cal.3d 110, 117.) "The 'actual controversy' referred to in this [the declaratory relief] statute is one which admits of definitive and conclusive relief by judgment within the field of judicial administration, as distinguished from an advisory opinion upon a particular or hypothetical state of facts." (*Selby Realty Co. v. City of San Buenaventura*, *supra*, 10 Cal.3d at p. 117.)

Because the substance of the declaratory relief cause of action, to the extent that it went beyond the basic issues we have clarified hereinabove, constituted a nonjusticiable request for an advisory opinion, we conclude that it was properly dismissed. Thus, as was the case regarding the other causes of action in plaintiffs' complaint, the trial court correctly sustained the demurrer to the declaratory relief cause of action without leave to amend.

## DISPOSITION

The judgment of the trial court is affirmed. Each party to bear their own costs on appeal.

_____
LEVY, Acting P.J.

WE CONCUR:


_____
FRANSON, J.


_____
PEÑA, J.

29.